**ERIC A. LIEPINS**
**ERIC A. LIEPINS, P.C.**
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - Telefax

Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| KENNETH AND MELINDA ANDERSON § | Case No. 16-41868-BTR-11 | |
| § | | |
| § | | |
| DEBTORS § | | |

| | | |
|---|---|---|
| IN RE § | | |
| § | | |
| KENNETH ANDERSON JR. MD PA § | CASE NO. 17-40618-BTR-11 | |
| § | | |
| DEBTOR § | Jointly Administered Under | |
| § | Case no. 16-41868 | |

**AMENDED JOINT DISCLOSURE STATEMENT OF KENNETH AND MELINDA ANDERSON AND KENNETH ANDERSON JR MD PA PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 18, 2017**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I

**INTRODUCTION**

**Identity of the Debtor**

**DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 18, 2017 – Page 1**

Kenneth and Melinda Anderson ("Anderson") are individuals who filed a voluntary Chapter 13 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on October 12, 2016. The Anderson's case was converted to a Chapter 11 proceeding on January 6, 2017. The Andersons operate a medical clinic in Sherman, Texas. Kenneth Anderson Jr. MD PA. ("PA") is a professional association which filed its Chapter 11 Bankruptcy on March 29,2017 in the Eastern District of Texas, Sherman Division. PA's sole business is to serve as the billing agent for the medical clinic. The two cases were Jointly Administered by order of the United States Bankruptcy Court on April 12, 2017. For the purposes of this Disclosure Statement all references to Debtor, unless otherwise noted, will mean Anderson and PA collectively. Debtor purposes to continue operations to pay a dividend to their creditors. .

### **Purpose of Disclosure Statement; Source of Information**

Debtor submits this Disclosure Statement ("Disclosure Statement"); pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtors' Joint Plan of Reorganization dated July 31, 2017 ("Plan"). This Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

### **Explanation of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a Debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a Plan is the principal purpose of a Chapter 11 reorganization case. A Plan sets forth the means for satisfying claims against and interests in the Debtor. After a Plan has been filed, it must be accepted by holders of claims against, or interests in, the Debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a Plan. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

### **Explanation of the Process of Confirmation**

Even if all Classes of Claims accept the Plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a Plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the Debtor were liquidated under Chapter 7 of the Code.

Acceptance of the Plan by the Creditors and Equity Interest Holders is important. In order for the Plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the Plan in such class must vote for the Plan and the equity interest holders that hold at least two-thirds (2/3) in

amount of the allowed interests actually voting on the Plan in such class must vote for the Plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the Plan in order for it to be confirmed by the Court. The Plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a Plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the Plan discharges the Debtor from all of their pre-confirmation debts and liabilities except as expressly provided for in the Plan and Section 1141(d) of the Code. Confirmation makes the Plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the Plan.

### **Voting Procedures**

**Unimpaired Class**. Claimants in Class 1, 7 and 8 and are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Classes**. The Class 2 through 6 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 6. Each holder of an Allowed Claim in Classes 2 through 6 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.
The Debtor is seeking acceptance of the Plan by the Allowed Secured Claims and Allowed Priority Claims, and Allowed Unsecured Claims.
Except to the extent permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, ballots that are received after the Voting Deadline will not be accepted or used by the Debtor in connection with the Debtors' request for confirmation of the Plan.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt) acceptance and revocation or withdrawal of ballots or master ballots will be determined by the Debtor in its sole discretion, whose determination will be final and binding.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 1100, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### **Best Interests of Creditors Test**

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

**Cramdown**

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a Plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

## II
## REPRESENTATIONS

[Note: Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan. A copy of the Plan is attached hereto as **Exhibit "A"**.]

[After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

The information contained in this Disclosure Statement has been derived from the **Debtor**, unless specifically stated to be from other sources.

**NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTORS OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTORS BELIEVE THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTORS ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THIS DISCLOSURE STATEMENT CONTAINS ONLY A**

**SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.**

### III

### FINANCIAL PICTURE OF THE DEBTOR

### History and Background of the Debtor

The Anderson's operate a medical clinic in Sherman, Texas known as New Horizons Pain Center specializing in the treatment and care of patients suffering from chronic pain. A large amount of the Anderson's income was generated from Medicaid reimbursements. Over the years, the Anderson had incurred personal income tax liability which they repaid with their personal tax returns in a timely manner for the funds received through the operation of the clinic. At the start of 2014, the reimbursement amounts and codes used by the medical clinic to receive payments for services were both changed and dramatically reduced. Funds that the Anderson's were expecting at the start of 2014 to pay their 2013 taxes did not materialize and as a result, the Anderson's were not able to pay their 2013 income tax bill. The Anderson's struggled throughout 2014 to adjust to the new payment and reimbursement rules. By the end of 2014 the Anderson's had to change the nature of the medical practice to abide by the new regulations. The Anderson were unable to fully pay the 2014 personal income taxes.

As a result of how the Anderson's accountant had structured the medical practice, all employees were being paid through the PA  In late 2015 and throughout 2016 employment taxes were being incurred but mistakenly not paid by PA. In early 2017, the Internal Revenue Service notified the Debtors it was levying the accounts of the PA to recover the unpaid employment taxes.

Prior to the filing of the Chapter 13 bankruptcy, the Debtors owned a 50% interest in a medical laboratory company known a Advanced Laboratory Services, Inc. ("Advanced"). Approximately one month prior to the bankruptcy filing, the Debtors sold their interest in Advanced for $82,000. The Debtors did not receive these funds, however the funds were applied to liabilities of Advanced that the Debtors were personally responsible to pay.

These bankruptcies were filed to address these tax issues and to restructure the Anderson's other obligations.

### Post-Petition Operations

Since the filing of the Bankruptcy, the Debtors have worked with the Internal Revenue Service and several of their secured creditors to maintain operations. The Debtor is currently operating and making payments to the Internal Revenue Service and to several secured creditors. The Debtors have been able to resolve the reimbursement issues that originally caused the problems and have been operating profitably throughout the bankruptcy process.

### Future Income and Expenses Under the Plan

Under the terms of the Plan, the creditors will receive cash payments over time from the continued operations of the Debtor. The Debtor has prepared projections forecasting the expected revenues and expenses for the next year. These projections are based upon the current revenue levels of the Debtor and the Debtor believes them to be feasible. The projections are attached hereto as Exhibit "B".

### Post-Confirmation Management

Upon Confirmation of the Debtors' Plan, the Anderson's will continue to operate the medical clinic and maintain their assets. The PA will continue to function was the billing arm of the medical clinic.

### IV.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtors are primarily service businesses. The Debtor maintains very little in the way of hard assets. As set forth in the Bankruptcy Schedules, the Anderson's owns a house, three vehicles and furniture, art, jewelry and other property which have been claimed as exempt. The other assets of the Debtor include the accounts receivable of the medical clinic and the medical equipment. The accounts receivable vary but generally average $130,000. The medical equipment has a current value of $100,000. The accounts receivable and medical equipment are subject to liens of the Internal Revenue Service and Independent Bank. Mrs. Anderson also has an interest in a company know Quantum Medical Solutions, LLC. This company currently has no operations and has no assets.

A liquidation analysis of the Debtors' assets is attached hereto as **Exhibit "C".**

### V.
### SUMMARY OF PLAN OF REORGANIZATION

The Debtors' Plan will break the existing claims into 8 categories of Claimants. Tax, Secured and unsecured claimants will receive cash payments over a period of time. Existing Equity will receive no payments but will maintain a part of their ownership.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Articles V and VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $20,000 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the Effective Date. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall be required to file post-confirmation operating reports until this case is closed. The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed IRS Secured and Priority Tax Creditor Claims)** are impaired and shall be satisfied as follows: The Allowed Amount of all Secured and Priority Tax Creditor Claims of the Internal Revenue Service ("IRS") shall be paid out of the revenue from the continued operations of the business. The Secured and Priority Tax Creditor Claims are alleged to be in approximate amount of $682,921.04 in the Anderson case and $207,053.86 in the PA case. The Debtors would show that these amounts are inaccurate because Anderson has been making adequate protection payments during the case, and the PA Proof of Claim asserts claims for unfiled returns at a time the PA was not operating. The Allowed Secured and Priority Claims of the IRS shall be paid over 72 months period commencing on the Effective Date, with interest at a rate of 4% per annum. If all the amounts in the Proofs of Claim were allowed the monthly payment would be $13,947.20. The IRS unsecured claim shall be treated under Class 6. The IRS shall retain their liens against the property of the Debtor, but shall release their liens, if any, when paid in full as called for by this Plan.

a. **Events of Default.** The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current

liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If a payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, attn: Lorraine Washington, 1100 Commerce Street, Mail Code 5024 DAL, Dallas, Texas 75242.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

The Class 2 Claimants are impaired under this Plan.

**Class 3 Claimants (Allowed Property Tax Creditor Claims)** The Allowed amount of Property Tax Creditor Claims shall be paid out of the continued operations of the Debtor. The claims of the Grayson County for certain unpaid ad valorem tax claims are asserted to be $34,533.02. The ad valorem taxes will receive post-petition pre-confirmation interest at the state statutory rate of 1% per month and post-confirmation interest at the rate of 12% per annum. The Debtor will pay these Class 3 creditors over a period of 60 months commencing on the Effective Date. The Debtor's monthly payment to pay these Class 3 Creditors will be approximately $791. The Property Tax Creditors shall retain their liens, if any, to secure their Class 3 claims until paid in full as called for by this Plan.

The Class 3 Claimants are impaired under this Plan.

**Class 4 Claimants (Allowed Claims of the Comptroller)** are impaired and shall be satisfied as follows: The Allowed amount of Tax Claims of the Comptroller for Franchise Tax is asserted to be $4,200. To the extent this claim has not already been paid it shall be paid out of the continued operations of the Debtor. The claims of the Comptroller over a period of 12 months from the Effective Date commencing on the Effective Date with interest at the rate of 4.50% per annum. The Debtor's monthly payment to pay the Class 4 Creditors will be approximately $513.68. The Comptroller shall retain its liens, if any, to secure their Class 4 claims until paid in full as called for by this Plan.

A failure of the reorganized debtor to make a plan payment to a tax creditor pursuant to the terms of the Plan or to remain current on post confirmation taxes shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to the tax payments within ten (10) days after

service of a written notice of default from a tax creditor then that tax creditor may (a) enforce the entire amount of all of its claims (b) exercise any and all rights and remedies available under applicable non bankruptcy law; and (c) seek such other relief as may be appropriate in this Court. The Debtor shall be entitled to three (3) Events of Default; on the fourth Event of Default the tax creditor has the option to immediately exercise all rights and remedies to collect all amounts due.

The Class 4 Claimant is impaired under this Plan.

**Class 5 Claimant (Allowed Secured Claim of Independent Bank**) is impaired and shall be satisfied as follows: Debtor Melinda Anderson executed that certain Promissory Note in favor of Independent Bank dated May 25, 2016 in the original principal amount of $50,000 ("Note # 1"). Note #1 was secured by, among other things, that certain Security Agreement of even date covering all the assets of the medical clinic. As of the Petition Date the balance owing on Note #1 was $45,001.01. On or about August 1, 2016 Debtor Melinda Anderson executed that certain Promissory Note in favor of Independent Bank in the original principal amount of $25,000 ("Note #2"). Note # 2 was also secured by, among other things, a Security Agreement of even date again covering all the assets of the medical clinic. As of the Petition Date, the balance owing on Note # 2 was $25,000. The Debtors would show the collateral securing Note # 1 and Note # 2 does not exceed the balances owing on Note #1 and Note #2 as of the Petition Date. Independent Bank shall have a total allowed secured claim in the amount of $70,0001.01 less any amounts received by Independent Bank post-petition. The amount of the Independent Bank Claim shall be paid with interest at the rate of 5% per annum over a period of 36 months commencing on the Effective Date. Independent Bank shall maintain its lien on the collateral until its Class 5 Claim is paid in full.

Class 5 is impaired under this Plan.

**Class 6 Claimants (Allowed Unsecured Creditors**) are impaired and shall be paid their pro rata share of a Class 6 Unsecured Creditors Pool. The Debtor shall make monthly payments into the Class 6 Unsecured Creditors Pool commencing on the Effective Date. The Debtor shall make distributions to the Class 6 Unsecured Creditors every 90 days commencing 90 days after the Effective Date. The Debtor will make a total of 20 disbursements to the Unsecured Class 6 Creditors. The Debtor shall make a total of $120,000 in payments into the Unsecured Class 6 Creditor's Pool. Based upon the Debtors' Schedules and the Proofs of Claim on file, the Debtor anticipates the total amount of Class 6 Creditors to be $180,000.

The Class 6 creditors are impaired under this Plan.

**Class 7 Claimant (Allowed Claims of Independent Bank, SunTrust Bank, Ally Financial, Compass Bank and Navient Solution**) are not impaired and shall be satisfied as follows: Anderson entered into three Motor Vehicle Retail Contracts for the purchase of motor vehicles. One agreement with SunTrust Bank for the purchase of a 2015 Mustang VIN 1FA6P8CH4F5353993. One agreement with Ally Financial for a 2016 Yukon VIN 1GKS1BKC6GR457172. One agreement with Compass Bank for a 2015 Cadillac VIN 1GYS4JKGFR239415 (collectively the "Vehicles").

Anderson maintains a homestead at 1705 Verdi Lane, Sherman, Texas ("Homestead"). Independent Bank maintains a lien on Debtor's Homestead. Anderson also has certain student loan debt current maintained by Navient Solutions ("Navient").  Anderson shall continue to maintain the contractual payments on the Vehicles and Homestead. The current lienholders on the Vehicles and Homestead shall maintain their current lien positions. The debts to Navient for student loans shall not be affected by this Plan.

Class 7 is not impaired under this Plan.

**Class 8 Claimant (Equity Holders)** are not impaired. The members of the PA shall retain their membership interest in the PA post confirmation.

Class8 interest holders are not impaired under this Plan.

## ARTICLE VI
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates continuing its current operations to fund the Plan. All payments under the Plan shall be made through the Disbursing Agent.

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this Plan or the offer, issuance, sale or purchase of securities.

## VII.
## FEASIBILITY OF PLAN

Based upon the projected income of the Debtor which is based on the current operations of the Debtor, the Debtor believes the Plan to be feasible.

Neither the Debtor, nor any member, officer, director, employee, agent, or professional shall have or incur any liability to any holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Cases, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

## VIII.
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the Plan as set forth in Article XIV of the Plan.

This Plan shall be the sole and exclusive remedy for any Creditor of the Debtors dealt with herein, so long as Debtors or the Reorganized Debtors are not in default under the Plan.

## IX.
## ALTERNATIVES TO DEBTOR"S PLAN

If the Debtor's Plan is not confirmed, the Debtors' bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtors for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In this case, the Debtors owe approximately $850,000 in tax debts and $75,000 in other secured debts. Taxes and secured debts must be paid prior to any payments to unsecured claims. As a result, if the Debtors were liquidated there would be no dividend to unsecured creditors.

## X
## RISKS TO CREDITORS UNDER THE DEBTOR"S PLAN

Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan. The risk connected with this Plan is the Debtor's ability to pay the Class 6 and 7 Claims. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtors. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.

Pursuant to the Plan, a portion of the outstanding indebtedness of the Debtor is being satisfied at a discount. The debt forgiveness income resulting from the satisfaction of Claims at a discount should not constitute taxable income, although it will reduce tax attributes, such as net operating loss ("NOL") carryovers. The utilization of any NOLs remaining after application of the attribute reduction rules may be subject to limitations imposed by section 382 of the Tax Code. In this case, however, the Debtor does not currently have NOL's which would be effected by the Plan.

## XII.
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor does not believe any claims under the provision of the Bankruptcy Code exist which would be beneficial for the Debtor to pursue. There are no claims the Debtor is aware of which would provide a greater return to the creditors of the estate than is provided in the Plan.

Dated: July 31, 2017.

Respectfully submitted,

Dr. Kenneth Anderson, Jr.

   /s/ Dr. Kenneth Anderson, Jr.
Dr Kenneth Anderson
President of General Partner

Melinda Anderson

   /s/ Melinda Anderson,
Melinda Anderson

Kenneth Anderson Jr. MD PA

  /s/ Dr. Kenneth Anderson
By: Dr Kenneth Anderson Jr
Its: Sole Member

ERIC A. LIEPINS
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 950
Dallas, Texas 75251
(972) 991-5591

**DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 18, 2017 - Page 13**

9972) 991-5788 - telecopier

ATTORNEY FOR DEBTOR

LIQUIDATION ANALYSIS EXHIBIT "C"

| ASSETS[1] | CHAPTER 11 VALUE | CHAPTER 7 VALUE |
|---|---|---|
| CASH | $25,000 | $25,000 |
| A/R | $165,000 | $85,000[2] |
| Office furniture/equipment | $100,000 | $50,000[3] |

| LIABILITIES | | |
|---|---|---|
| ADMINISTRATIVE | $20,000 | $20,000 |
| TAXES | $850,000 | $850,000 |
| INDEPENDENT BANK | $75,000 | $75,000 |
| UNSECURED CREDITORS | $180,000 | $180,000 |

---

[1] Excluding assets that the Debtor, Anderson claimed as exempt.

[2] Debtor anticipates that the collection of accounts would be reduced by approximately 50% if the Debtor were not in business

[3] The debtor believes the used furniture and equipment would not result in more than 50% of the value in a liquidation sale.

**DEBTORS' AMENDED JOINT DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED AUGUST 18, 2017 - Page 14**

Distributions to unsecured creditors   67%                                            0%