Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KENNETH AND MELINDA ANDERSON | § | Case No. 16-41868-BTR-11 |
| | § | |
| | § | |
| DEBTORS | § | |

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| KENNETH ANDERSON JR. MD PA | § | CASE NO. 17-40618-BTR-11 |
| | § | |
| DEBTOR | § | Jointly Administered Under |
| | § | Case no. 16-41868 |

**AMENDED JOINT PLAN OF REORGANIZATION FOR KENNETH ANDERSON AND MELINDA ANDERSON AND KENNETH ANDERSON JR MD PA DATED JULY 31, 2017**

**TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, Kenneth and Melinda Anderson and Kenneth Anderson Jr. MD PA., Debtors and Debtors-in-Possession in the above-referenced bankruptcy cases, and proposes the following Joint Plan of Reorganization ("Plan").  The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtors into eight (8) separate classes.

**ARTICLE I**

**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.      "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code. However, ad valorem tax authorities shall not be required to file an administrative expense claim and request for payment in order for their administrative expense claims to be allowed pursuant to 11 U.S.C. Section 503(b)(1)(D).

2.      "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.      "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.      "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.      "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6       **"Case"** shall mean this Chapter 11 case.

7.       **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off.  Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.       **"Claimant"** shall mean the holder of a Claim.

9.       **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.      **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.      **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.      **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.      **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

14.      **"Creditor"** shall mean any person having a Claim against Debtor.

15.      **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.      **"Debtor"** or **"Debtors"** shall mean Kenneth and Melinda Anderson individually, and Kenneth Anderson Jr. MD PA.,  the Debtors in the above-styled and numbered case.

17.      **"Disbursing Agent"** shall mean the Reorganized Debtor.

18.      **"Effective Date"** shall mean the Final Confirmation Date , or as soon thereafter as reasonably practical, but in no event later than 30 days after the Final Confirmation Date.

19.      **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.      **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.      **"Final Confirmation"** shall mean that date which is eleven (11) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if

a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.    **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation or filed for relief under Chapter 11 of the Code.

23.    **"Petition Date"** shall mean the date on which the Debtors filed these proceeding, for Kenneth and Melinda Anderson October 12, 2016 and for Kenneth Anderson Jr. MD PA March 29, 2017.

24.    **"Plan"** shall mean this Joint Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.    **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26    **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.    **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.    **"Substantial Consummation"** shall occur upon Debtor's commencement of payments to creditors as provided in this Plan.

30.    **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.    **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1     Claims and Debts:  Various types of Claims and Debts are defined in this Plan.  This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles 4, 5 and 6 of this Plan.  Claims and Debts incurred by the Debtor post-petition in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2     **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3     Time for Filing Claims:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, on or before the Bar Date to participate under this Plan.  Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan.  Claims arising from rejection of a lease or executory contract shall be made prior to the time for objecting to confirmation of Debtor's Plan. Administrative claims shall be filed with the Court within thirty (30) days following approval of the Debtor's Plan.

2.4     **Modifications to Plan**:  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1     All trade and service debts and obligations incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2     All post-petition and post confirmation taxes, including 2017 and beyond ad valorem taxes, sales and use taxes, and franchise taxes, incurred in the normal course of business by the Debtor or Reorganized Debtor on or after the Petition Date will be paid pursuant to their respective

statutory due date. Such tax creditors shall not be required to file an administrative claim for such taxes as a requirement to being paid.

# ARTICLE 4
# DIVISION OF CREDITORS INTO CLASSES

4.1     Classification of Claims:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.  Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2     Class 1:        Consists of Allowed Administrative Claims.(Not Impaired)
        Class 2:        Consists of Allowed IRS Tax Creditor Claims.  (Impaired)
        Class 3:        Consists of Allowed Property Tax Claims (Impaired)
        Class 4:        Consists of Allowed Comptroller Tax Claims (Impaired)
        Class 5:        Consists of Allowed Secured Claim of Independent  Bank (Impaired)
        Class 6:        Consists of Allowed General Unsecured Claims  (Impaired)
        Class 7:        Consists of Allowed Exempt Vehicle, Homestead and Student Loan
                        Claims  (Not Impaired)
        Class 8:        Consists of Allowed Equity Interest Holder Claims. (Not Impaired)

# ARTICLE 5
# TREATMENT OF CLASSES

5.1     Satisfaction of Claims and Debts:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article 5 of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.  Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

5.2     **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to the law firm of  Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full.  Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $20,000 including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed.   The Class 1 Claimants are not impaired under this Plan.

5.3     **Class 2 Claimants (Allowed IRS Secured and Priority Tax Creditor Claims)** are impaired and shall be satisfied as follows:  The Allowed Amount of all Secured and Priority Tax Creditor Claims of the Internal Revenue Service ("IRS") shall be paid out of the revenue from the continued operations of the business. The Secured  and Priority Tax Creditor Claims are alleged to be in  approximate amount of $682,921.04 in the Anderson case and  $207,053.86 in the PA case. The Debtors would show that these amounts are inaccurate because Anderson has been making adequate protection payments during the case, and the PA Proof of Claim asserts claims for unfiled returns at a time the PA was not operating.  The Allowed Secured and Priority Claims of the IRS shall be paid  over 60 months period commencing on the Effective Date, with interest at a rate of 4% per annum. If all the amounts in the Proofs of Claim were allowed the  monthly payment would be $16,418.90.The IRS unsecured claim shall be treated under Class 6. The IRS shall retain their liens against the property of the Debtor, but shall release their liens, if any, when paid in full as called for by this Plan.

a. **Events of Default.** The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C)     If a payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS,  attn: Lorraine Washington, 1100 Commerce Street, Mail Code 5024 DAL, Dallas, Texas 75242.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal

Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

The Class 2 Claimants are impaired under this Plan.

5.4 **Class 3 Claimants (Allowed Property Tax Creditor Claims)** The Allowed amount of Property Tax Creditor Claims shall be paid out of the continued operations of the Debtor. The claims of the Grayson  County for certain unpaid ad valorem tax claims are asserted to be $24,275.17.  The ad valorem taxes  will receive post-petition  pre-confirmation interest at the state statutory rate of 1% per month from the Petition Date until the Effective date and  post-confirmation interest at the rate of 12% per annum from the Effective Date until payment in full. The Debtor will pay these  Class 3 creditors  over a period of 60 months from the Petition Date  commencing on the Effective Date. The Debtor's monthly payment to pay these Class 3 Creditors will be approximately $791. The Property Tax Creditors shall retain their liens, if any, to secure their Class 3 claims until paid in full as called for by this Plan. The taxing authorities shall retain their liens that secured all amounts owed for tax year 2017 ad valorem property taxes.

The Class 3 Claimants are impaired under this Plan.

5.5 **Class 4 Claimants (Allowed Claims of the Comptroller)** are impaired and shall be satisfied as follows:  The Allowed amount of Tax Claims of the Comptroller for Franchise Tax is asserted to be $4,200. To the extent this claim has not already been paid it shall be paid out of the continued operations of the Debtor. The claims of the Comptroller  over a period of 12 months from the Effective Date commencing on the Effective Date with interest at the rate of 4.50% per annum . The Debtor's monthly payment to pay the Class 4 Creditors will be approximately $513.68. The Comptroller shall retain its liens, if any, to secure their Class 4 claims until paid in full as called for by this Plan.

A failure of the reorganized debtor to make a plan payment to a tax creditor pursuant to the terms of the Plan or to remain current on post confirmation taxes shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to the tax payments within ten (10) days after service of a written notice of default from a tax creditor then that tax creditor may (a) enforce the entire amount of all of its claims (b) exercise any and all rights and remedies available under applicable non bankruptcy law; and (c) seek such other relief as may be appropriate in this Court. The Debtor shall be entitled to three (3) Events of Default; on the fourth Event of Default the tax creditor has the option to immediately exercise all rights and remedies to collect all amounts due.

The Class 4 Claimant is impaired under this Plan.

5.6 **Class 5 Claimant (Allowed Secured Claim of Independent Bank**) is impaired and shall be satisfied as follows: Debtor Melinda Anderson executed that certain Promissory Note in favor of Independent Bank dated May 25, 2016 in the original principal amount of $50,000 ("Note # 1"). Note #1 was secured by, among other things,  that certain Security Agreement of even date covering all the assets of the medical clinic. As of the Petition Date the principal balance owing on

Note #1 was $46,159.37. On or about August 1, 2016 Debtor Melinda Anderson executed that certain Promissory Note in favor of Independent Bank in the original principal amount of $25,000 ("Note #2"). Note # 2 was also secured by, among other things, a Security Agreement of even date again covering all the assets of the medical clinic. As of the Petition Date, the principal balance owing on Note # 2 was $25,000. The Debtors would show the collateral securing Note # 1 and Note # 2 does not exceed the balances owing on Note #1 and Note #2 as of the Petition Date. Independent Bank shall consolidate its two secured claims: the balance owing on Note #1 as of August 22, 2017 in the amount of $21,189.10 and the balance owing on Note #2 as of August 22, 2017 in the amount of $34,902.26. Independent Bank shall have a total allowed consolidated Class 5 secured claim in the approximate amount of $56,081.47 (calculated as being the total of sums owed on Note #1 and Note #2 on the Petition Date, less any amounts received by Independent Bank post petition).
The Independent Bank Class 5 Secured Claim shall be paid with interest at the rate of 5% per annum over a period of 24 equal monthly installments of $2,460 commencing on September 30, 2017. Debtor will execute new loan documents at confirmation setting forth the payment terms herein. Independent Bank shall maintain its lien on the collateral until its Class 5 Claim is paid in full.

Class 5 is impaired under this Plan.

5.7    **Class 6 Claimants (Allowed Unsecured Creditors**) are impaired and shall be paid their pro rata share of   a Class 6 Unsecured Creditors Pool. The Debtor shall make monthly payments into the Class 6 Unsecured Creditors Pool commencing on the Effective Date. The Debtor shall make distributions to the Class 6 Unsecured Creditors every 90 days commencing 90 days after the Effective Date. The Debtor will make a total of 20 disbursements to the Unsecured Class 6 Creditors.  The Debtor shall make a total of $120,000 in payments into the Unsecured Class 6 Creditor's Pool. Based upon the Debtors' Schedules and the Proofs of Claim on file, the Debtor anticipates the total amount of Class 6 Creditors to be $180,000.

The Class 6 creditors are impaired under this Plan.

5.8    **Class 7 Claimant (Allowed Claims  of Independent Bank, SunTrust Bank, Ally Financial,   Compass Bank and Navient Solution**) are not impaired and shall be satisfied as follows: Anderson entered into three Motor Vehicle Retail Contracts for the purchase of motor vehicles. One agreement with SunTrust Bank for the purchase of a 2015 Mustang VIN 1FA6P8CH4F5353993. One agreement with Ally Financial for a 2016 Yukon VIN 1GKS1BKC6GR457172. One agreement with Compass Bank for a 2015 Cadillac VIN 1GYS4JKGFR239415 (collectively the "Vehicles"). Anderson maintains a homestead at 1705 Verdi Lane, Sherman, Texas ("Homestead"). Independent Bank maintains a lien on Debtor's Homestead. Anderson also has certain student loan debt current maintained by Navient Solutions ("Navient"). Anderson shall continue to maintain the contractual payments on the Vehicles and Homestead. The current lienholders on the Vehicles and Homestead shall maintain their current lien positions. The debts to Navient for student loans shall not be affected by this Plan.

Class 7 is not impaired under this Plan.

      5.9    **Class 8 Claimant (Equity Holders)** are not impaired. The members of the PA shall retain their membership interest in the PA post confirmation.

      Class8 interest holders are not impaired under this Plan.


# ARTICLE 6
# MEANS FOR EXECUTION OF THE PLAN

      6.1    Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

      6.2    On or before the date of Final Confirmation or the Effective Date, as this Plan provides, the Debtor will transfer to the Disbursing Agent funds sufficient to make the payments required by this Plan.  The Disbursing Agent shall be the Reorganized Debtor.

      6.3    The Debtor's obligations under this Plan will be satisfied out of continued business operations of the Debtor.

      6.4    As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this Plan or the offer, issuance, sale or purchase of securities.

      6.5    The Debtor, the Debtor-in-possession, the Reorganized Debtor nor any of their employees, officers, directors, agents or representatives, nor any professionals employed by them or any of their members, agents, representatives or professional advisors, shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to formulating, implementing, confirming or consummating this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan.

      6.6    Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

## ARTICLE 7
## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.  Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

## ARTICLE 8
## STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on the Effective Date. The lease on the current facility where the Debtors operate  is expressly assumed by confirmation of this Plan.

## ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     No Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor.

9.3.     Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent via facsimile to Kenneth Anderson 903-815-5245, In the event the default of payment to the ad valorem taxing authorities is not cured within ten (10) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

# ARTICLE 10
# DISCHARGE

10.1    Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released except as provided for in Section 10.3.

10.2    The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

10.3    The Anderson Debtors shall obtain a discharge pursuant to 11 U.S.C. § 1141(d)(5) after completion of all payments under the Plan. The Anderson Debtors shall file a Motion for Discharge after Completion of Payments ("Motion") and a Statement under 11 U.S.C. § 522(q) ("Statement"). The Motion and Statement shall provide 21 days notice to all parties of the Request for Entry of A Discharge. In the event of an Objection the Motion or Statement, the Court will conduct a hearing on the Objection. In the event of no Objection, the Court may enter the discharge.

# ARTICLE 11
# AMENDMENTS TO THE PLAN

11.1    Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2    In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

# ARTICLE 12
# EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate is vested in the Reorganized Debtor.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1    To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2    To allow or disallow Claims.

14.3    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6    To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7     To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8     To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9     To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10    To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11    To consider any modification of this Plan under Section 1127 of the Code.

14.12    To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13    To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14    To enter an order closing this case.

Dated: July 31, 2017.

Respectfully submitted,

Dr. Kenneth Anderson, Jr.


_____/s/  Dr. Kenneth Anderson, Jr._____
Dr Kenneth Anderson
President of General Partner

Melinda Anderson


_____/s/  Melinda Anderson,_____
Melinda Anderson

Kenneth Anderson Jr. MD PA


__/s/ Dr. Kenneth Anderson_____
By: Dr Kenneth Anderson Jr
Its: Sole Member